kaw

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CRAIG W. BROWN, JAN BROWN, ) <br> DAVID A. ARRIGHI, LYDIA REED, ) <br> RONALD L. CRITCHTON-REED, ) <br> KATHERINE CRITCHTON-REED, ) <br> and WALTER SIMMONS, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) Case No. 06-2548-JAR <br> ALMA, INC., THOMAS C. MOORE, ) <br> JAMES W. MOORE, and BRADLEY ) <br> YOUNG, LLP, ) <br> ) <br> Defendants. ) <br> _____) | |

## MEMORANDUM AND ORDER

The Court now considers plaintiffs' Motion to Reconsider Court's Memorandum and Order (Doc. 34) and plaintiffs' Motion to Amend and/or Correct Court's Memorandum and Order (Doc. 42). For the reasons set forth below, plaintiffs' motions are denied in part and granted in part.

**Background**

On October 24, 2007, this Court granted defendants Alma Inc., Thomas Moore, and James Moore's motion to dismiss after finding that plaintiffs failed to respond. The Court also found that plaintiffs failed to plead their fraud, misrepresentation, and Racketeering, Influenced, Corrupt, Organization ("RICO") claims with particularity as required under Rule 9 of the Federal Rules of Civil Procedure. In dismissing the federal claims, the Court declined supplemental jurisdiction as the remaining claims were better suited for state court. In its Order of October 16,

2007, this Court granted defendant Bradley P. Young L.L.P.'s motion to dismiss. The Court found that the Kansas saving statute did not toll the clock for statute of limitations purposes because the action brought in state court was not substantially similar to the action brought in federal court; therefore, plaintiffs' state law claims were barred by the statute of limitations.[1] Subsequently, plaintiff filed the current motions to reconsider the Court's Orders, claiming that Federal Rule of Civil Procedure 60(b)(1) permitted reconsideration on the grounds of excusable neglect.

**Motion to Reconsider**

Rule 60(b)(1) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment . . . for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect."[2] The Rule is extraordinary and seeks to strike a balance between the "'finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts.'"[3] Whether a party has demonstrated excusable neglect should be litigated on the merits.[4] The trial court must determine whether the moving party has establish excusable neglect and should resolve all doubts in that party's favor.[5]

Under Rule 60(b)(1), excusable neglect encompasses situations in which a party is

---

[1] *See* Order of October 16, 2007 (Doc. 31); K.S.A. § 60-513(a)(3).

[2] *Jennings v. Rivers*, 394 F.3d 850, 856 (10th Cir. 2005) (citing *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983)).

[3] *Id.*

[4] *Id.*

[5] *Id.*

2

negligent in failing to meet deadlines.[6]  Determining whether a party's neglect is excusable accounts for equitable considerations, including the danger of prejudice to the opposing party, the delay and impact on the judicial proceedings, the reason for the neglect and the control the movant had over the actions, and whether the moving party acted in good faith.[7]  Where the fault in the delay lies is quite possibly the most important factor in determining whether neglect is excusable.[8]  In addition to the above factors, a court may also consider whether the neglect was an isolated unintentional incident as compared to a pattern of delay, and whether the attorney acted promptly to correct the mistake.[9]

In this case, lead counsel for plaintiffs states in his affidavit that he hired a computer service contractor to transition his office computer system in preparation for new tenants.  The transformation was scheduled for completion by August 22, 2007.  But, the contractor failed to complete the project because of a miscalculation in the time required and the capacity of the office system.  As a result of the calculation error, lead counsel's internet service was incapacitated for almost one month.  During the down time, lead counsel lost many e-mails, voice-mails, and internet access.  Now, both counsel argue that lead counsel's actions constituted excusable neglect.  Defendants, however, contend that the attorneys for plaintiffs should have notified the Court that lead counsel's office and computer system were down for a month.  Even with notification, plaintiffs' counsel had two separate offices, one located in Kansas City,

---

[6]*Id.* (citing *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 394 (1993)).

[7]*Id.* (citing *Pioneer Inv. Servs. Co.*, 507 U.S. at 395).

[8]*Id.* (citing *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004)).

[9]*Id.* (citing *Hancock v. City of Okla. City*, 857 F.2d 1394, 1396 (10th Cir. 1988)).

Missouri and the other in Independence, Missouri. As such, if one attorney did not receive the e-mail notifying him of the motion filed by defendants, then the other did. Additionally, lead counsel could have easily accessed his e-mail from a different location that has internet access, could have called the clerk's office, or could have called the defendants.

Accounting for all these factors and circumstances, the Court sees no reason why plaintiffs' attorneys failed to realize that a motion was pending. The electronic filing system used in this district notified plaintiffs' attorneys of each document filed in the case. One notification e-mail was sent to each counsel at separate offices and at separate e-mail addresses. Lead counsel explains that his internet access at his office was not working because of complications with the server and contractor, and because there was damage to electrical components caused by a fire next door. Also, he has no record of the notification at home. In his affidavit, however, lead counsel provides no basis to establish that his access was prohibited from home or, for that matter, from the any number of coffee shops throughout the country. Furthermore, it is unlikely that each counsel failed to access his e-mail account for over a month. Additionally, after realizing that his office internet was inaccessible, lead counsel did not inform the Court that he was not receiving e-mail notifications or call the Court during the office transformation to determine what documents were pending. As such, counsels' actions do not rise to excusable neglect; rather, it is just neglect. Accordingly, plaintiffs' motion to reconsider is denied.

**Motion to Amend or Correct the Court's Order**

In addition, plaintiffs seek to have the Court's Order of October 24, 2007, amended. Plaintiffs claim that the Order should state whether the state law claims and the federal claims

4

are dismissed with or without prejudice.  First, the Court notes that in its prior Order of October 16, 2007 (Doc. 31), it determined that the statute of limitations had expired on plaintiffs' state law claims because the Kansas saving statute did not apply where the action brought and dismissed in state court was not substantially similar to the action subsequently brought in this Court.  In its October 24, 2007 Order, the Court did not address whether the Kansas saving statute saved plaintiffs' state law claims against defendants Alma, Inc., Thomas Moore, and James Moore because defendants did not make that assertion.  Now, these defendants assert that because the Court found that the statute of limitations had expired on the state law claims due to the inapplicability of the Kansas saving statute, those claims should be dismissed with prejudice.  This Court agrees.  Thus, to the extent that this Court did not dismiss the claims with prejudice, it should be noted that those state law claims are dismissed with prejudice, and therefore, plaintiffs are not allotted any additional time under 28 U.S.C. § 1367(d) to refile in state court.

**Plaintiffs' Proposed Amended Complaint is Futile**

Even if this Court was so inclined to grant plaintiffs' motion to reconsider, it would be futile as the state claims have lapsed, the fraud claims still lack particularity, and plaintiffs' securities fraud claim cannot be an underlying basis for a RICO action.  Plaintiffs seek leave of Court to amend their complaint.  Generally, leave to amend is "freely given."[10]  Typically, a party is granted leave to amend unless there is "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."[11]

---

[10] *Duncan v. Manager, Dept. of Safety, City & County of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (citing Fed. R. Civ. P. 15(a)).

[11] *Id.* (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

"A court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss or if it fails to state a claim upon which relief may be granted."[12] An analysis of proposed amendment under the Federal Rule of Civil Procedure 12(b) is appropriate when determining whether a proposed amendment is futile.[13]  Under 12(b)(6), all well-pleaded allegations in the complaint are taken as true and construed in the light most favorable to the plaintiff.[14]  As previously stated in this Circuit, the complaint should not be dismissed unless it appears beyond doubt that plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief.[15]  Recently, however, the Supreme Court has changed this standard to a new inquiry: "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"[16]  This means that a plaintiff must "'nudge his claim across the line from conceivable to plausible' in order to survive a motion to dismiss."[17]  Thus, the new standard requires plaintiff to show that his claim is more than metaphysically possible by showing that there is a "reasonable likelihood of mustering factual support."[18]

Here, plaintiffs cannot make that showing as they incorrectly rely on securities fraud as the predicate act for their RICO claim.  Title 18, section 1964(c) provides that "[a]ny person

---

[12]*Collins v. Wal-Mart, Inc.*, 245 F.R.D. 503, 507 (D. Kan. 2007) (citing *Ketchum v. Cruz*, 961 F.2d 916, 920 (10th Cir. 1992)).

[13]*Id.* (citing *Sheldon v. Vermonty*, 204 F.R.D. 679, 682 (D. Kan. 2001)).

[14]*Id.*

[15]*Id.*

[16]*Ridge at Red Hawk, LLC v. Schneider,* 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007)).

[17]*Id.* (quoting *Twombly*, 127 S. Ct. at 1969).

[18]*Id.*

injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . , except that no person may rely upon any conduct that would have been actionable as fraud in the purchase sale of securities." Plaintiffs rely on *Resolution Trust Corp. v. Stone,*[19] for the proposition that racketeering activity is defined as, among other things, fraud in the sale of securities. But, as defendants correctly note, this case predates the passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which amended RICO to eliminate securities fraud as a predicate offense.[20]

Plaintiffs argue in the alternative that the amendment is only applicable to actions brought under the Securities Act of 1933, not state securities law violations. The Court disagrees. While the Court is only able to find one other case dealing with state securities law violations as the predicate act for a RICO claim,[21] it notes that in that case the Central District of California found that fraud in the sale of securities under state law could not support a federal RICO claim.[22] The statute as amended does not state that the application of securities is only to securities claims under the Securities Act of 1933. The provision reads: "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962."[23] Moreover, plaintiffs had a cause of action for

---

[19] 998 F.2d 1534 (10th Cir. 1993).

[20] Private Securities Litigation Reform Act, Pub. L. No. 104-67, 109 Stat. 737 (1995) (codifies as amended at 18 U.S.C § 1964(c)); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007) (explaining that securities fraud cannot be the underlying predicate act for a RICO claim); *Bald Eagle Area School Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999) (same); *Blythe v. Deutshe Bank AG*, 399 F. Supp. 2d 274, 278 (S.D.N.Y. 2005) (same); *Stephenson v. Deutsche Bank AG*, 282 F. Supp. 2d 1032, 1071 (D. Minn. 2003) (same).

[21] *See Burnett v. Rowzee*, No. CV 07-641 DOC, 2007 U.S. Dist. Lexis 73295 (C.D. Cal. Aug. 28, 2007).

[22] *Id.* at *8.

[23] 18 U.S.C. § 1964(c).

7

securities fraud under the Kansas Securities Act, which has been repealed and replaced by the Uniform Securities Act.  This Court is of the opinion that the statute's reference to "securities" encompasses the sale of securities in violations under federal law as well as state securities law.  Thus, as securities fraud cannot be the predicate act for a RICO claim, plaintiffs' proposed amendment is futile and accordingly, this action is dismissed with prejudice.[24]

**IT IS THEREFORE ORDERED BY THE COURT THAT** Plaintiffs' Motion to Reconsider (Doc. 34) is **DENIED**, and Plaintiffs' Motion to Amend (Doc. 42) is **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that the Court's Order of October 16, 2007, should be amended to dismiss the state law claims with prejudice.

**IT IS SO ORDERED.**

Dated this 18th  day of December 2007.

 S/ Julie A. Robinson
**Julie A. Robinson
United States District Judge**

---

[24]*PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699-70 (6th Cir. 2004) (dismissing plaintiffs' case with prejudice because granting a motion to amend would frustrate the purpose of the PSLRA).